No. 22-1378

In the United States Court of Appeals
for the Tenth Circuit

───────────────

**United States of America**,
Plaintiff-Appellant,

v.

**Lyndell Daniels**,
Defendant-Appellee.

───────────────

On Appeal from the United States District Court
for the District of Colorado
Honorable Regina M. Rodriguez
D.C. No. 21-CR-00332-RMR

───────────────

**Reply Brief of the United States**

───────────────

| | |
|---|---|
| Cole Finegan<br>United States Attorney | Elizabeth S. Ford Milani<br>Assistant U.S. Attorney<br>1801 California Street<br>Suite 1600<br>Denver, CO 80202<br>Telephone: (303) 454-0100<br><br>Attorneys for Appellant |

**ORAL ARGUMENT IS REQUESTED**

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 2

    Officer Idler had the minimal level of objective justification required to detain Daniels. .................................. 2

    A.  The sequence of events in the parking lot connected Daniels to the 911 caller's report. ....................... 3

    B.  The district court made no finding as to why the SUV left the parking lot, contrary to Daniels' claim… ........................................................................... 7

    C.  The court never examined whether the suspicious facts *together* amounted to reasonable suspicion, and it drew the wrong conclusion from the innocent facts. ...................................... 9

CONCLUSION ................................................................................................. 12

ORAL ARGUMENT STATEMENT ................................................................. 12

CERTIFICATE OF COMPLIANCE ................................................................ 13

CERTIFICATE OF SERVICE ......................................................................... 14

# TABLE OF AUTHORITIES

## Federal Cases

*Florida v. J.L.*,
  529 U.S. 266 (2000) ............................................................................. 5

*Navarette v. California*,
  572 U.S. 393 (2014) ............................................................................. 5

*Romero v. Story*,
  672 F.3d 880 (10th Cir. 2012) ............................................................. 5

*Terry v. Ohio*,
  392 U.S. 1 (1968) ............................................................................... 11

*United States v. Archuleta*,
  619 F. App'x 683 (10th Cir. 2015) (unpublished) ............................. 10

*United States v. Batara-Molina*,
  60 F.4th 1251 (10th Cir. 2023) .......................................................... 10

*United States v. Briggs*,
  720 F.3d 1281 (10th Cir. 2013) .................................................. 4, 6, 9

*United States v. Conner*,
  699 F.3d 1225 (10th Cir. 2012) ........................................................... 5

*United States v. Cortez*,
  449 U.S. 411 (1981) ......................................................................... 4, 6

*United States v. Frazier*,
  30 F.4th 1165 (10th Cir. 2022) ..................................................... 7, 10

*United States v. House*,
  463 F. App'x 783 (10th Cir. 2012) (unpublished) ............................... 8

*United States v. Johnson*,
  364 F.3d 1185 (10th Cir. 2004) ..................................................... 9, 10

*United States v. Wood*,
  106 F.3d 942 (10th Cir. 1997) ........................................................... 11

INTRODUCTION

Daniels cannot get around the fact that the black SUV, seemingly connected to the 911 call, pulled away from the parking lot after Daniels said something to those inside the car when Officer Idler arrived on the scene. Because the SUV was of the same type (dark) and in the same spot described by the 911 caller only minutes before Officer Idler arrived, Officer Idler had reason to suspect that the SUV was the same one used by the men the 911 caller reported were pocketing and un-pocketing guns in preparation for something. And because Officer Idler had reason to believe that the SUV drove away at Daniels' direction upon seeing law enforcement arrive, the reasonable suspicion attached to the SUV and its occupants extended to Daniels.

Whether Daniels' clothing matched those reported by the 911 caller is a red herring. It doesn't matter whether Daniels *was* one of the persons the 911 caller described. Daniels was linked to the 911 caller's report of potential criminal activity when the SUV—implicated by that 911 caller's report—pulled away after Daniels spoke to its occupants when he saw Officer Idler.

Because any reasonable suspicion that the SUV drove away at Daniels' direction connected him to the potential criminal activity, Daniels tries to make a finding that the district court never did. He claims that the court found that his words did *not* cause the SUV to pull away. Answer Br. at 12. But the finding to which he refers—"the SUV here simply left the parking lot"—is a finding only about the car's departing speed, not that Daniels had no role in its departure. That fact is fatal to his claims.

## ARGUMENT

**Officer Idler had the minimal level of objective justification required to detain Daniels.**

Everyone agrees that three categories of facts informed whether the officer was constitutionally permitted to briefly detain Daniels: the 911 caller's report of potential criminality; the SUV's presence and actions in the parking lot; and the setting of these events.

But the parties don't agree that the second category of facts linked the 911 caller's report to Daniels. To the contrary, Daniels claims that, in light of the discrepancy between his outfit and the 911

2

caller's descriptions of the suspects, there simply wasn't enough to connect him to any potential criminal activity.

To make that claim, Daniels reads into the court's order a finding it never made. He also defends the court's alleged holistic analysis. But the court never explained why the facts in totality didn't provide more than a hunch to Officer Idler, and it wrongly appeared to conclude that the existence of numerous unsuspicious facts foreclosed reasonable suspicion.

This Court should reverse.

### A. The sequence of events in the parking lot connected Daniels to the 911 caller's report.

As Officer Idler arrived on the scene—fewer than four minutes after the 911 call at the heart of this case came in, I:55—he noticed a black SUV in front of the apartment building's entrance—matching the look and location of the car that the 911 caller had described. IV:28-29. Five to ten feet away stood Daniels. IV:54-55. He was wearing an orange jumpsuit beneath a black jacket—different from the suspects' outfits that the 911 caller had described. IV:29, 31. But as soon as he noticed Officer Idler approaching, Daniels said

3

something to the occupants of the SUV, and that car drove away. IV:28-29.

Daniels dismisses these suspicious events, appearing to claim that because he did not match the 911 caller's descriptions of suspects, his interaction with the SUV was irrelevant to reasonable suspicion. That's wrong.

Given the clothing discrepancy, the 911 caller may not have described *Daniels* to the call taker.[1] But as soon as Daniels said something to the SUV's occupants upon Officer Idler's approach, and the SUV immediately left the parking lot, the officer had reasonable suspicion to conclude that Daniels was involved in the potential wrongdoing described by the 911 caller—persons with guns getting ready to "do something." I:57.[2] Officer Idler testified at the

---

[1] The court appeared to make a legal conclusion that it was "objectively unreasonable" to believe the 911 caller had described Daniels, *e.g.*, I:115, 120, while ignoring that Daniels was wearing a black jacket over the top half of his jumpsuit, *compare* I:17, *with* I:107, 114-15, 120. That analysis runs headlong into the premise that reasonable suspicion turns on probabilities, not certainties. *United States v. Cortez*, 449 U.S. 411, 418 (1981).

[2] To be sure, weapons aren't inherently illegal. Answer Br. at 11. But they obviously "can be used for unlawful purposes." *United States v. Briggs*, 720 F.3d 1281, 1289 (10th Cir. 2013). The specific

4

suppression hearing that is precisely the deduction he made: "I believed [Daniels] was either a witness or a suspect at that point. I didn't have – I knew he was involved somehow in this." IV:31; *see also* IV:134-38 (government making these arguments at hearing).

Thus, reasonable suspicion didn't turn only on Daniels' proximity to the SUV, as he contends. *See* Answer Br. at 16. His actions upon noticing the officer, and the SUV's subsequent exit from the parking lot after Daniels' words, showed the link between Daniels and the 911 caller's reports.[3] *See Romero v. Story*, 672 F.3d 880, 885 (10th Cir. 2012) ("Plaintiff does not quarrel with the

---

allegations here—that the three men were pocketing and un-pocketing guns, in a high-crime area known for weapons, late at night, and looking like they were getting ready to do something— were sufficiently suspect to support further investigation by Officer Idler. *See* Opening Br. at 13; *United States v. Conner*, 699 F.3d 1225, 1231 (10th Cir. 2012) ("Reasonable suspicion may exist even where a 911 call fails to allege criminal activity and the responding officers do not observe any illegal conduct.").

[3] And the 911 caller's reports were reliable, for the reasons explained in the Opening Brief at 14-18. Daniels makes no effort to defend the district court's failure to apply the reliability analysis from this Court and the Supreme Court to the 911 call. *See, e.g.*, *Navarette v. California*, 572 U.S. 393, 398-401 (2014). That analysis reveals that this case simply does not turn on *Florida v. J.L.*, 529 U.S. 266 (2000), as the district court concluded (I:114) and Daniels asserts on appeal (Answer Br. at 10).

5

proposition that a person's geographic and temporal proximity to a crime, taken together with other factors, may give rise to reasonable suspicion."). Indeed, this Court has previously recognized that the circumstances leading up to a companion's flight may suggest that the companion and the defendant are acting in concert (and the companion's flight can therefore support reasonable suspicion as to the defendant). *See Briggs*, 720 F.3d at 1291. So Daniels is incorrect that even if reliable, the 911 call did not help the government's case "a whit." Answer Br. at 10. While Daniels defends the district court's reasons why the SUV, in isolation, was not suspicious, he has no answer for the black-letter law that whether reasonable suspicion exists as to him depends on the totality of the circumstances—not just whether Officer Idler could have stopped the SUV.

Because Officer Idler could "reasonably surmise" that Daniels was linked to the 911 caller's report via his and the SUV's actions, *Cortez*, 449 U.S. at 421, his arguments that the clothing mismatch "weighed against" reasonable suspicion, or that the mismatch failed to specifically identify him for reasonable suspicion, are beside the point, Answer Br. at 8-10; I:114-15. Separately, the government has

6

uncovered no authority in this Court for the premise that unsuspicious facts not only fail to add to the reasonable suspicion tally, but that they also *subtract* from it. *Cf., e.g.*, *United States v. Frazier*, 30 F.4th 1165, 1174 (10th Cir. 2022) (noting a non-suspicious fact "*adds nothing* to the reasonable suspicion calculus" (emphasis added)).

### B. The district court made no finding as to why the SUV left the parking lot, contrary to Daniels' claim.

Perhaps because he recognizes the crucial nature of the events that occurred in the parking lot, Daniels contends that the district court found, as a factual matter, that the SUV did *not* leave the parking lot at his direction. Answer Br. at 12. Thus, the argument goes, the black SUV could not connect the 911 caller's report to Daniels if his statement to it and its exit were unrelated.

The court made no such finding. Three features of its order make that clear.

First, in the cited portion of the district court's order, the court wasn't addressing Daniels' association with the SUV. Instead, it discussed whether the SUV was suspicious *on its own*: "The

7

Government argues that the officers had reasonable suspicion to stop the Defendant because he was associated with the SUV. This begs the question, however, of whether the SUV itself was reasonably suspicious." I:116.

Second, the court analogized the SUV's exit here to *United States v. House*, 463 F. App'x 783, 788 (10th Cir. 2012), "where the defendant turned and walked in the opposite direction when he saw police[,]" but did not engage in "'headlong flight,'" I:116-17. In the very next sentence, the court made the finding on which Daniels relies: "So, too, does it appear that the SUV here simply left the parking lot." I:117 (footnote omitted). Considering these points together shows that, contrary to Daniels' claim, the court was actually linking Officer Idler's arrival (as communicated by Daniels) to the SUV's departure. I:116-17.

Third, in a footnote immediately following the finding on which Daniels hangs his hat, the court reiterated that the SUV left the parking lot at a normal rate of speed but made no findings about the SUV's speed after it was outside of the parking lot. I:117 n.3. Thus,

8

its finding that the SUV "simply left the parking lot" was a finding about the speed of departure, not the cause of departure.

Accordingly, the court didn't find that the SUV's exit was unrelated to Daniels. And Officer Idler's testimony—entitled to deference—was that Daniels "advised" the SUV's occupants to leave when Daniels saw the officer approach. IV:30-31; *see Briggs*, 720 F.3d at 1288 ("Given Officer Cannon's experience with individuals carrying weapons illegally, we must 'defer to [his] ability . . . to distinguish between innocent and suspicious actions.'" (citation omitted)); *United States v. Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004) ("We agree with the government that the district court's order . . . failed to accord proper deference to the judgment of an experienced officer.").

### C. The court never examined whether the suspicious facts *together* amounted to reasonable suspicion, and it drew the wrong conclusion from the innocent facts.

Daniels also claims that the court properly weighed the totality of the circumstances presented to Officer Idler, given (1) the title of the pertinent subsection of its order and (2) that the court heard

9

argument and factual recitations from counsel. Answer Br. at 18 (citing I:81, 88, 110-21; IV:133, 154-55, 164).

But what matters is the analysis the court actually undertook. And here, it never explained why the factors on which the government relied *together* fell short of reasonable suspicion. *See Johnson*, 364 F.3d at 1189-90 (reversing suppression order where the district court discussed each factor in isolation and the totality of the circumstances only in passing); *cf. Frazier*, 30 F.4th at 1174-78 (examining each factor in isolation *and then* explaining the aggregate effect of the suspicious facts: the trooper's hunch the defendant was trying to hide something and that the defendant was driving a rental car); *United States v. Batara-Molina*, 60 F.4th 1251, 1256-59 (10th Cir. 2023) (conducting similar analysis); *United States v. Archuleta*, 619 F. App'x 683, 688-91 (10th Cir. 2015) (unpublished) (conducting similar analysis).

Here, Officer Idler knew that a 911 call reported firsthand observations of three men pocketing and un-pocketing guns and getting in and out of a dark SUV late at night and in an area known for persons with weapons. At the scene, he saw a black SUV

10

precisely where the caller described. Then he saw a person next to that SUV—while not exactly matching the 911 caller's descriptions of the suspects' clothing—say something to the car's occupants upon noticing the officer, and the SUV immediately left the scene. "It would have been poor police work indeed for" Officer Idler to have done nothing. *Terry v. Ohio*, 392 U.S. 1, 23 (1968).

Instead of the proper holistic analysis, the court identified each unsuspicious fact lurking in the record, on which Officer Idler did not rely in detaining Daniels, like the well-lit nature of the parking lot and the 911 caller's statement that the events were not an emergency. I:119. Then, the court appeared to conclude that those unsuspicious facts outweighed the facts on which Officer Idler *did* rely—reiterating the conclusions the court had already drawn about those suspicious facts in isolation. I:119-21. While it's the court's prerogative to decide whether the facts relied upon for reasonable suspicion were "so innocent or susceptible to varying interpretations as to be innocuous[,]" Answer Br. at 20 n.8 (quoting *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997)), that's not what the court did here.

## CONCLUSION

This Court should reverse the district court's order granting Daniels' motion to suppress and remand this case for further proceedings.

## ORAL ARGUMENT STATEMENT

The government requests oral argument to assist this Court's understanding of the district court's analytical errors in deciding Daniels' motion to suppress.

DATED this 18th day of July, 2023.

>  Respectfully submitted,
>
>  COLE FINEGAN
>  United States Attorney
>
>  */s/ Elizabeth S. Ford Milani*
>  ELIZABETH S. FORD MILANI
>  Assistant United States Attorney
>  1801 California Street, Suite 1600
>  Denver, CO 80202
>  (303) 454-0100
>  Elizabeth.Ford.Milani@usdoj.gov
>
>  Attorneys for Plaintiff-Appellant

## CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. 32(a)(7)(B)(i), I certify that the **REPLY BRIEF OF THE UNITED STATES** is proportionally spaced and contains <u>2,247</u> words, according to the Microsoft Word software used in preparing the brief.

DATED: July 18, 2023　　　　　　　/s/ *Kayla Keiter*
　　　　　　　　　　　　　　　　　KAYLA KEITER
　　　　　　　　　　　　　　　　　U.S. Attorney's Office

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit, using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

.

    */s/ Kayla Keiter*
    KAYLA KEITER
    U.S. Attorney's Office